GOLDEN GATE, The (HILL v.). See Cases Nos. 6,491 and 6,492.

GOLDEN GATE, The (McGUIRE v.). See Case No. 8,815.

GOLDEN ROSE. The (BOREAL v.). See Case No. 1,658.

GOLDEN STATE, The (RUDDY v.). See Case No. 12,111.

---

## Case No. 5,510.

### In re GOLDER et al.

[2 Hask. 28.][1]

District Court, D. Maine. Feb.. 1876.

BANKRUPTCY—PROOF OF DEBT.

1. Recitals in an agreement between two persons, that the note of one was received by the other in payment of a sum that the former was to furnish the latter to be used in his business, cannot be contradicted by parole.

2. A firm note given by one partner when the firm is insolvent, without the assent of his copartners, is a fraud upon the firm creditors and cannot be proved in bankruptcy against the firm assets.

3. A firm note given by one partner to pay a firm debt after the firm had been dissolved and without authority from the retiring partners does not bind them, and cannot be proved in bankruptcy against the firm assets; but when received under a misapprehension of facts, supposing that such partner had acquired a valid title to the firm assets, when he had not done so, the note may be surrendered, and the claim for which it was received be proved against the firm assets.

In bankruptcy. [In the matter of Dwight O. Golder & Co.] Petition by the assignee to expurge and disallow certain debts proved before Mr. Register Fessenden.

Edward M. Rand, for creditor.
Chas. P. Mattocks, for assignee.

FOX, District Judge. This is a petition by the assignee of this firm for a disallowance of two claims proved against the joint estate by J. W. Stevenson, one founded on a note for $1,500, bearing date October 30, 1873, payable in ten months to the creditor, and signed in the firm name by Golder. This note although made and executed at its date, was not delivered until some months afterwards, when the firm was deeply insolvent. In his proof of debt, Stevenson makes affi-

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

davit that "the consideration of this note was money loaned by him to the firm at its date, at their request;" but this is now conceded to have been untrue.

In August, 1873, Golder and Stevenson entered into a written agreement, which recites that "Stevenson contributed $1,500 to the capital then employed by Golder in his business," for the use of which sum and his personal services Golder agreed to allow him a compensation of $1,000 per year. It was expressly stipulated that this amount was not to be at the risk of the business; and it is quite clear that by this agreement, Stevenson did not become a partner with Golder, but only a servant, having loaned his employer a sum of money to be used in the business, and for which and his personal services, he was to receive a fixed, definite compensation, in no way dependent upon the profits.

The agreement recites that "$850 was paid in cash, and $650 by Stevenson's note to Golder on three months." It is claimed this note was not intended as a payment of any part of the $1,500, but was only a loan for the time being of Stevenson's credit to Golder. This view is directly in conflict with the express language of the written agreement of the parties; and evidence in conflict with its provisions on this point cannot be received. The cash book shows this note was discounted, and that on September 2d Golder realized therefrom $637.91.

On the 24th of September, 1873, D. C. Golder and John T. Rogers entered into a written agreement, by which Rogers was to advance Golder $3,000 to the capital, "and also devote his own time to the business for a compensation of $1,100 per year. The business was to be carried on under the style of D. C. Golder & Co." This arrangement continued until January 29, 1874, when it was terminated by mutual agreement.

In the case of Mattocks v. Rogers [Case No. 9,300], this court had occasion to determine the relation of Rogers to the business transacted under the style of D. C. Golder & Co.; and it was decided that while Rogers and Golder were not partners inter sese, Rogers had rendered himself accountable to all the creditors of D. C. Golder & Co., and that the property acquired in the name of D. C. Golder & Co. was to be held and applied to the discharge of their liabilities; and this decision was affirmed on appeal to the circuit court.

Rogers advanced to D. C. Golder & Co. $2,000 on the 25th of September, and the balance of the $3,000 shortly afterwards. On the 25th of September, Stevenson let Golder & Co. have $650, for which he received a note from Golder, signed "D. C. Golder & Co.," payable in sixty days. This note fell due before his note for that amount given to D. C. Golder on September 2d, and was left by him at the bank for collection, but was subsequently withdrawn at Golder's request.

On the 4th of December, Stevenson received from Golder & Co. $660, the entry of which in Stevenson's hand writing in the cash book is, "Paid note J. W. Stevenson, $660." The controversy here is, whether this amount was received in payment of the note for $650, given by Stevenson to Golder & Co. September 2d, or of the note of $650, given by Golder & Co. to Stevenson September 25th on 60 days, and with which Stevenson then paid his own note. The assignee claims the latter note was thus paid; while Stevenson contends that this amount was directly applied by Golder & Co. in payment of his note for $650 of September 2d, and of which Golder had received the benefit, and therefore that the $650 advanced to Golder & Co. on September 25th has never been repaid.

I am satisfied that Stevenson was repaid with interest on December 4th the $650 he had loaned Golder & Co.; that with this he paid his own note which Golder had discounted at the First National Bank, and which came due that day, and that Golder still remained the debtor of Stevenson for the amount of $1,500 under their contract of August 28th.

The $1,500 note here offered in proof against the firm estate, although filled out and signed October 30th, as is herein before stated, was not completed and delivered until the latter part of January. It is agreed that the facts as established to my satisfaction in Mattocks v. Rogers, supra, shall be considered as in evidence in the present case. In that case, the court was fully satisfied that the firm of D. C. Golder & Co. was deeply insolvent at the delivery of this note. The only consideration for this note being the private debt of an individual member of the firm, and the firm being then insolvent and knowing such to be its condition, it must be deemed a fraud upon the copartnership creditors, and cannot be received as against them to share in the distribution of the copartnership estate.

It is claimed, however, that in October, Rogers was informed by Golder that he had made this note for Stevenson's benefit, and that Rogers assented to its being so done. Rogers is shown to have been wholly without business experience or capacity, and to have been greatly imposed upon by Golder throughout the whole of their business. Rogers in his deposition does answer, "I never saw this note, but knew that it was given. It was done with my assent. We raised money on the note. I don't know whether Golder & Co. ever assumed said note. I did not see the books and don't know positively what debt the note represents. I thought it was for money raised on the note. I was informed by Golder that Stevenson would put in $1,500. This was about the middle of October, 1873. Stevenson did contribute money to the firm, and I think nearly $1,500. So far as I know the money was all given by Stevenson at one time, whether in cash or notes I don't know. I was a member of the firm at the time. I never had any conversation with either Gold-

er or Stevenson about the firm's assuming payment of the note."

These extracts from Rogers' deposition establish most conclusively his entire ignorance of the origin and consideration of the note; that he always supposed the firm received the money from it, and never knew that it was given in payment of an old debt of Golder individually. His assent, therefore, if any was ever given by him, was clearly under an entire misapprehension of the consideration, by having supposed the firm had been benefitted thereby for the full amount of the note. Stevenson says in his examination, "Rogers never became responsible to me for this note unless he did so by becoming a partner." It is quite clear that by reason of that relation simply, Rogers never was answerable upon this demand.

It further appears, that after Rogers became connected with the concern, Golder had some cards printed in the firm name of Dwight C. Golder & Co., with the names of himself, Rogers and Stevenson, in the lower left corner. The evidence is clear that but few of them were ever distributed; and although inquiry has been made upon the subject by the assignee, he has not been able to discover that any of the firm creditors ever gave credit to Stevenson as a member of the firm. Under all the circumstances disclosed, I do not find that Stevenson ever consented to the issuing of such cards and their distribution; and the facts bring the case within Wood v. Pennell, 51 Me. 52, in which it was decided that if one holds himself out as a partner of another, he does not thereby make him in fact a partner, nor render himself liable as such, except to those who are thereby led to believe he is a partner, and who gave credit to the supposed firm upon such belief.

After Rogers withdrew from the firm, Golder continued to carry on the business for a short time under the name of D. C. Golder & Co., and Stevenson remained in his employment. The petition of the creditors was filed against the firm on the 19th of February. On the 10th of February Golder and Stevenson settled their accounts, and Stevenson received a note for $413.75 in settlement, payable by D. C. Golder & Co., in three months. An error of $100 was made in the adjustment, which sum was credited on the note. The balance of the consideration of the note was $28.85 for services rendered by Stevenson to Golder after the dissolution, and $284.90 for services rendered by Stevenson to Golder & Co., as their clerk.

The note, having been given by Golder in the firm name after the dissolution, without any authority from Rogers, was not binding upon him or the firm. The proof of debt made by Stevenson on this claim is in the alternative, either for the allowance of the note, or so much of the consideration therefor as was originally a firm liability. The note having been given without authority, I

hold that it was not payment for such services, and that the party is remitted to and may establish his claim against the firm for the amount of the firm liability included in the note. It is said however, that at the time this note was given, Golder individually was carrying on business under the style of D. C. Golder & Co., and that this note was not given or received as a firm liability, but as the individual liability of Golder under the name and style in which he was transacting his business; and I infer from Stevenson's testimony, that such was his understanding at the time he received the note. He supposed Golder had become the owner of all the firm estate by a good and valid title from Rogers, and that the business was to be continued by Golder for his benefit; and trusting to this condition of things, and to Golder's title to the firm estate, he received this note; but by a decree of this court, it has been adjudged that Golder did not acquire a valid title to the firm estate, but that it remained liable, as copartnership effects, primarily to the payment of copartnership debts.

This claim of Stevenson was originally of that description. By mistake of the true relation of the party, he was induced to receive this note in payment of the firm debt, which he would not have done if he had been aware of the real facts of the case. Under these circumstances, I hold that he has a right to surrender the note and make proof for his original claim against the estate.

Some question might perhaps have arisen as to the amount, and whether the whole sum should be allowed at the rate of $1,000 per year, as that sum included the compensation for the use of the loan of $1,500 to D. C. Golder individually; but the assignee does not object to the amount of the claim for this reason. The proof of this claim, viz. $284.90, of which $50 is for personal services, performed within six months next preceding publication of notice of bankruptcy proceedings, is sustained and allowed. The proof of the $1,500 note is vacated and disallowed.